TIMOTHY RAPER, Employee, Plaintiff v. MANSFIELD SYSTEMS, INC. and
FEDERATED MUTUAL INSURANCE COMPANY, Employer/Carrier, Defendants

No. COA07-681

(Filed 18 March 2008)

**1. Workers' Compensation— carpal tunnel syndrome—evidence of causation—sufficiency**

The Industrial Commission did not err in a workers' compensation case by awarding benefits for plaintiff's carpal tunnel syndrome where the evidence was that the syndrome, even if preexisting, was aggravated by his work-related injury.

**2. Workers' Compensation— initial injury—not an injury by accident**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff did not suffer a compensable shoulder injury where, as the driver of a gasoline tanker, he felt a snap in his shoulder as he lifted a hose used for filling a storage tank in the usual way and then threw the hose into a trough instead of placing it. While there were other injuries, there was no evidence that lifting the hose in the normal manner caused or aggravated plaintiff's shoulder injury.

**3. Workers' Compensation— continuing disability—ability to do some work—findings not sufficient**

The Industrial Commission did not make sufficient findings in a workers' compensation case when denying disability benefits after the date that plaintiff was capable of some work. The matter was remanded for findings about whether plaintiff had made a reasonable effort to obtain employment or that any effort to obtain employment would have been futile because of preexisting conditions.

**4. Workers' Compensation— attorney fees denied—no abuse of discretion**

The Industrial Commission did not abuse its discretion in a workers' compensation case by not awarding plaintiff attorney fees. The Commission found that defendants did not engage in stubborn, unfounded litigiousness and plaintiff did not cite any authority supporting his contention that defendants' defense was unreasonable or that the Commission abused its discretion.

RAPER v. MANSFIELD SYS., INC.

[189 N.C. App. 277 (2008)]

Appeal by defendants and cross-appeal by plaintiff from Opinion and Award of the Full Commission of the North Carolina Industrial Commission entered 2 February 2007 by Commissioner Dianne C. Sellers. Heard in the Court of Appeals 29 November 2007.

*Anderson Law Firm by Michael J. Anderson, for plaintiff-appellant/appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Tonya D. Davis, for defendants-appellants/appellees.*

JACKSON, Judge.

Timothy Raper ("plaintiff") and Mansfield Systems, Inc. ("defendant-employer"), along with its insurance carrier, Federated Mutual Insurance Co. (collectively, "defendants"), appeal from an Opinion and Award of the Full Commission of the North Carolina Industrial Commission ("Full Commission") filed 2 February 2007. For the following reasons, we affirm in part and remand in part.

Plaintiff was employed by defendant-employer as a driver of gasoline tankers. On 28 May 2003, after filling a gasoline storage tank in his usual manner, plaintiff reached down to pick up the hose and, when he was approximately fifty percent upright, experienced a snapping sensation in his right shoulder area. Upon feeling the snapping sensation, instead of placing the hose in the trough in his usual manner, plaintiff threw the hose onto the trough to avoid dropping it and the possibility of not being able to pick it up again. Plaintiff described the trough as being higher than his shoulders.

Thereafter, plaintiff reported the incident to defendant-employer, and was instructed to seek treatment at Smithfield Urgent Care ("the Urgent Care"). At the time, plaintiff's symptoms included pain extending from the right side of his neck down into his right shoulder and hand. Plaintiff also experienced numbness and tingling of the second, third, and fourth digits on his right hand as well as weakness in his right arm. Previously, plaintiff had presented to the Urgent Care, but plaintiff's medical records from the Urgent Care disclosed no prior pain in his neck, right shoulder, or right hand and no prior numbness or tingling in the fingers on his right hand.

On 29 May 2003, plaintiff presented to the Urgent Care, and medical records from that date describe plaintiff's symptoms in his right trapezius muscle and cervical spine, with the right side being worse

RAPER v. MANSFIELD SYS., INC.

[189 N.C. App. 277 (2008)]

than the left. The medical records also indicate that plaintiff was able to rotate his neck and head only half as much as normal. On 2 June 2003, plaintiff returned to the Urgent Care, and was diagnosed as having sustained a cervical sprain and injury to his trapezius muscle. On 9 June 2003, plaintiff again presented to the Urgent Care, and was diagnosed as having cervical radiculopathy.

On 26 September 2003, plaintiff presented to Dr. Carol B. Siegel ("Dr. Siegel") at Raleigh Orthopaedic Clinic, who noted that plaintiff was experiencing numbness and tingling in the fingers on his right hand. Dr. Siegel conducted numerous diagnostic tests, including an electromyography and nerve conduction studies of plaintiff's right upper extremity, and diagnosed plaintiff as having right carpal tunnel syndrome. Dr. Siegel recorded that because plaintiff denied having hand and finger symptoms prior to 28 May 2003, she could attribute his carpal tunnel syndrome only to the injury occurring on that date.

On 3 May 2004, plaintiff presented to Dr. Josephus T. Bloem ("Dr. Bloem"), stating that he was experiencing constant discomfort in his right shoulder and pain in his right wrist. Following his examination, Dr. Bloem diagnosed plaintiff as having right carpal tunnel syndrome and a likely rotator cuff tear. Dr. Bloem stated that there was no manner available to determine the extent of any rotator cuff tear without performing surgery, but with respect to plaintiff's carpal tunnel syndrome, Dr. Bloem recommended that plaintiff attempt conservative therapies before considering surgery. Dr. Bloem opined that plaintiff's right carpal tunnel syndrome was likely the result of a wrist sprain that occurred when plaintiff threw the tanker hose onto the trough on 28 May 2003. Additionally, while acknowledging that plaintiff has diabetes, and the potential relationship between diabetes and carpal tunnel syndrome, Dr. Bloem opined that the trauma of 28 May 2003 was a more likely cause given that plaintiff had symptoms only in his right hand.

Dr. Bloem opined that performing the duties associated with plaintiff's position with defendant-employer would be problematic for plaintiff. He assigned plaintiff restrictions on the use of his right arm, including limitations on over-head work, lifting, pushing, and pulling. Dr. Bloem ultimately assigned plaintiff a ten percent permanent partial impairment rating to his right arm due to the shoulder injury and carpal tunnel syndrome, and he opined that plaintiff has reached maximum medical improvement.

RAPER v. MANSFIELD SYS., INC.

[189 N.C. App. 277 (2008)]

Plaintiff originally filed his claim for the 28 May 2003 injury against Mansfield Oil Co. ("Mansfield Oil") and St. Paul Travelers Insurance Co. ("Travelers"). Travelers initially paid indemnity and medical compensation through 1 October 2003, but on 12 November 2003, Travelers denied compensability of plaintiff's claim on the grounds that plaintiff was not an employee of Mansfield Oil at the time of the accident but instead was an employee of defendant-employer. Plaintiff amended his request for hearing, properly identifying defendants as parties. Defendants filed a response, admitting the employment relationship but denying plaintiff's claim, contending that because Travelers had accepted plaintiff's claim, Travelers was estopped from denying further responsibility for plaintiff's injury. After defendants' response but prior to the hearing, plaintiff reached a settlement with Mansfield Oil and Travelers in the amount of $8,000.00, and this settlement was approved by Deputy Commissioner Bradley W. Houser ("Deputy Commissioner Houser") on 17 August 2005.

A hearing was held before Deputy Commissioner Houser on 28 October 2005, and Deputy Commissioner Houser entered an Opinion and Award in plaintiff's favor on 6 February 2006. Defendants filed notice of appeal to the Full Commission. By Opinion and Award entered 2 February 2007, the Full Commission affirmed with modifications Deputy Commissioner Houser's Opinion and Award; Commissioner Thomas J. Bolch dissented without written opinion. In its Opinion and Award, the Full Commission found that on 28 May 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident to his cervical spine. The Full Commission also found that plaintiff sustained a compensable injury when he threw the hose and sprained his wrist, resulting in carpal tunnel syndrome. With respect to plaintiff's shoulder injury, however, the Full Commission found that (1) the medical evidence failed to show that plaintiff's right shoulder injury was related to the injury by accident or the specific traumatic incident that occurred on 28 May 2003; and (2) the shoulder injury was not the result of an injury by accident arising out of and in the course of his employment. Thereafter, both plaintiff and defendants filed timely notice of appeal.

On appeal, defendants contend that the Full Commission erred by concluding that plaintiff's right carpel tunnel syndrome is compensable, and plaintiff contends that the Full Commission erred by (1) finding that plaintiff did not suffer a shoulder injury as a result of the

28 May 2003 incident; (2) denying plaintiff disability benefits after 3 May 2004; and (3) failing to award plaintiff attorneys' fees as a result of defendants' unreasonable defense of his claim.

"[A]ppellate review of an award from the Commission is generally limited to two issues: (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." *Johnson v. S. Tire Sales & Serv.*, 358 N.C. 701, 705, 599 S.E.2d 508, 512 (2004). "In weighing the evidence, the Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and the Commission may reject entirely any testimony which it disbelieves." *Hedrick v. PPG Indus.*, 126 N.C. App. 354, 357, 484 S.E.2d 853, 856, *disc. rev. denied*, 346 N.C. 546, 488 S.E.2d 801 (1997). "The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings." *Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 353, 524 S.E.2d 368, 371, *disc. rev. denied*, 351 N.C. 473, 543 S.E.2d 488 (2000). "This Court 'does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). Additionally, "failure to assign error to the Commission's findings of fact renders them binding on appellate review." *Estate of Gainey v. S. Flooring & Acoustical Co., Inc.*, 184 N.C. App. 497, 501, 646 S.E.2d 604, 607 (2007). "This Court reviews the Commission's conclusions of law *de novo*." *Britt v. Gator Wood, Inc.*, 185 N.C. App. 677, 681, 648 S.E.2d 917, 920 (2007).

[1] In their sole argument on appeal, defendants contend that Dr. Siegel's and Dr. Bloem's opinions as to the causation of plaintiff's right carpal tunnel syndrome constituted incompetent evidence and that the Full Commission, therefore, erred in awarding workers' compensation benefits for plaintiff's right carpal tunnel syndrome. We disagree.

"A claimant in a workers' compensation case bears the burden of proving, by a preponderance of the evidence, a causal relationship between the injury and the claimant's employment." *Legette v. Scotland Mem'l Hosp.*, 181 N.C. App. 437, 455, 640 S.E.2d 744, 756 (2007), *appeal dismissed and disc. rev. denied*, 362 N.C. 177, 658 S.E.2d 273 (2008). When the causation of a particular " 'injury in-

volves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.' " *Id.* (quoting *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980)). Expert testimony based upon speculation and conjecture "is not sufficiently reliable to qualify as competent evidence on issues of medical causation." *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000). Therefore,

> the Supreme Court has allowed "could" or "might" expert testimony as probative and competent evidence to prove causation. However, "could" or "might" expert testimony is insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation. An expert witness' testimony is insufficient to establish causation where the expert witness is unable to express an opinion to any degree of medical certainty as to the cause of an illness. Likewise, where an expert witness expressly bases his opinion as to causation of a complex medical condition solely on the maxim *post hoc ergo propter hoc* (after it, therefore because of it), the witness provides insufficient evidence of causation.

*Adams v. Metals USA*, 168 N.C. App. 469, 476, 608 S.E.2d 357, 362 (internal quotation marks, citations, and alterations omitted), *aff'd*, 360 N.C. 54, 619 S.E.2d 495 (2005) (per curiam).

In the instant case, defendants contend that Dr. Bloem's testimony as to causation was incompetent on the grounds that it was based upon (1) the maxim *post hoc ergo propter hoc* and (2) facts not in evidence, specifically, the existence of a wrist sprain suffered by plaintiff when he threw the tanker hose onto the trough.

In formulating his opinion, Dr. Bloem considered electrodiagnostic tests performed by Dr. Siegel as well as plaintiff's description of the symptoms and mechanism of the injury. As this Court has stated previously, "[a] physician's diagnosis often depends on the patient's subjective complaints, and this does not render the physician's opinion incompetent as a matter of law." *Jenkins v. Pub. Serv. Co.*, 134 N.C. App. 405, 410, 518 S.E.2d 6, 9 (1999), *rev'd in part on other grounds and disc. rev. improvidently allowed in part*, 351 N.C. 341, 524 S.E.2d 805 (2000) (per curiam). Based upon the tests and plaintiff's accounts, Dr. Bloem confirmed Dr. Siegel's diagnosis of carpal tunnel syndrome, and on appeal, defendants have disputed only the issue of causation, not the diagnosis itself.

**RAPER v. MANSFIELD SYS., INC.**

[189 N.C. App. 277 (2008)]

In discussing the issue of causation, Dr. Bloem noted that plaintiff *may* have suffered a sprain, and that such a sprain, more than likely, would have caused plaintiff's carpal tunnel syndrome. The Full Commission found that plaintiff was injured when he "sprained his wrist, resulting in carpal tunnel syndrome," but as defendants correctly argue, the record contains no evidence that plaintiff, in fact, experienced a wrist sprain. Dr. Bloem also acknowledged that plaintiff's carpal tunnel syndrome *could* have been caused by his diabetes or by the repetitive vibrations he experienced while driving trucks. Ultimately, the record fails to contain evidence that precisely identifies the initial cause of plaintiff's carpal tunnel syndrome.

Nevertheless, the record does contain evidence that, even if plaintiff's carpal tunnel syndrome was a pre-existing condition, the carpal tunnel syndrome was aggravated by the 28 May 2003 injury. Dr. Bloem testified that plaintiff may have "had silent carpal tunnel surgery [sic] based on his diabetes, maybe. Well, maybe, but if so then *it was aggravated by the injury and you're still back at the injury that's doing it.*" (Emphasis added). It is well-established that "[a]ggravation of a pre-existing condition caused by a work-related injury is compensable under the Workers' Compensation Act." *Moore v. Fed. Express*, 162 N.C. App. 292, 297, 590 S.E.2d 461, 465 (2004).[1] Dr. Bloem did not base his opinion solely upon facts not in evidence or the maxim *post hoc ergo propter hoc*. Whether caused by a wrist sprain, diabetes, or vibrations experienced while driving trucks, competent evidence supports the Full Commission's award of workers' compensation benefits for plaintiff's carpal tunnel syndrome.

Because we hold that Dr. Bloem's testimony constituted competent evidence to support the Full Commission's finding that plaintiff's 28 May 2003 injury caused his carpal tunnel syndrome, we need not reach plaintiff's arguments concerning the competency of Dr. Siegel's opinions as to causation. *See Gore v. Myrtle/Mueller*, 362 N.C. 27, 42, 653 S.E.2d 400, 410 (2007) ("Since appellate courts are 'limited to reviewing whether any competent evidence supports the Com-

---

1. Our Supreme Court recently held that " 'evidence tending to show that the employment simply aggravated or contributed to the employee's condition goes only to the issue of causation' " and an employee still must " 'establish[] that the employment placed him at a greater risk for contracting the condition than the general public.' " *Chambers v. Transit Mgmt.*, 360 N.C. 609, 613, 636 S.E.2d 553, 556 (2006) (quoting *Futrell v. Resinall Corp.*, 151 N.C. App. 456, 460, 566 S.E.2d 181, 184 (2002), *aff'd*, 357 N.C. 158, 579 S.E.2d 269 (2003) (per curiam)), *reh'g denied*, 361 N.C. 227, 641 S.E.2d 801 (2007). As noted *supra*, however, defendants have confined their argument to the issue of causation, and therefore, we limit our analysis accordingly.

mission's findings of fact and whether the findings of fact support the Commission's conclusions of law,' our review must stop there." (quoting *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000))). Accordingly, defendants' assignments of error are overruled.

**[2]** With respect to plaintiff's appeal, plaintiff first contends that the Full Commission erred by finding that plaintiff did not suffer a shoulder injury as a result of the incident of 28 May 2003. We disagree.

Pursuant to North Carolina General Statutes, section 97-2(6), a compensable injury "shall mean only injury by accident arising out of and in the course of the employment . . . ." N.C. Gen. Stat. § 97-2(6) (2005). It is well-established that

> [a]n accident is an unlooked for event and implies a result produced by a fortuitous cause. If an employee is injured while carrying on his usual tasks in the usual way the injury does not arise by accident. However, if an interruption of the work routine occurs introducing unusual conditions likely to result in unexpected consequences, an accidental cause will be inferred.

*Lineback v. Wake County Bd. of Comm'rs*, 126 N.C. App. 678, 681, 486 S.E.2d 252, 254-55 (1997) (internal quotation marks and citations omitted). As this Court has explained,

> "[a]n 'accident' is not established by the mere fact of injury but is to be considered as a separate event preceding and causing the injury. No matter how great the injury, if it is caused by an event that involves both an employee's normal work routine and normal working conditions it will not be considered to have been caused by accident."

*Renfro v. Richardson Sports Ltd. Partners*, 172 N.C. App. 176, 180, 616 S.E.2d 317, 322 (2005) (quoting *Searsey v. Perry M. Alexander Constr. Co.*, 35 N.C. App. 78, 79-80, 239 S.E.2d 847, 849 (1978)), *disc. rev. denied*, 360 N.C. 535, 633 S.E.2d 821 (2006).

Section 97-2(6) provides a different test for back injuries:

> [W]here injury to the back arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned, "injury by accident" shall be construed to include any disabling physical injury to the back arising out of and causally related to such incident.

N.C. Gen. Stat. § 97-2(6) (2005). Therefore, the "statute provides two theories on which a back injury claimant can proceed: (1) that claimant was injured by accident; or (2) that the injury arose from a specific traumatic incident." *Fish v. Steelcase, Inc.*, 116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), *cert. denied*, 339 N.C. 737, 454 S.E.2d 650 (1995). "[T]o prove a 'specific traumatic incident,' a worker must only show that the injury occurred at a 'judicially cognizable' point in time." *Zimmerman v. Eagle Elec. Mfg. Co.*, 147 N.C. App. 748, 754, 556 S.E.2d 678, 681 (2001), *disc. rev. improvidently allowed*, 356 N.C. 425, 571 S.E.2d 587 (2002) (per curiam). As this Court observed, by providing the separate definition of "injury by accident," "the General Assembly intended to relax the requirement that there be some unusual circumstance that accompanied the [back] injury." *Bradley v. E.B. Sportswear, Inc.*, 77 N.C. App. 450, 452, 335 S.E.2d 52, 53 (1985).

In the case *sub judice*, Dr. Bloem testified and plaintiff's medical records demonstrate that plaintiff experienced, *inter alia*, a trapezius strain and a cervical strain. Defendants concede that plaintiff's injury to his cervical spine was a back injury and, therefore, compensable as an injury "arising out of and causally related to [a specific traumatic] incident." N.C. Gen. Stat. § 97-2(6) (2005); *see also Zimmerman*, 147 N.C. App. at 753-54, 556 S.E.2d at 681 (discussing similar symptoms in terms of a back injury compensable upon a showing of a causal relation to a specific traumatic incident). Plaintiff's trapezius strain, however, was a "neck injury and/or shoulder injury," as the trapezius "is the muscle between the neck and the shoulder that makes the flare of the neck." Although plaintiff argues in his brief that "[t]he *only* medical evidence of record demonstrates that Plaintiff's shoulder injury is, indeed, related to the specific traumatic incident of May 28, 2003," (emphasis in original), the "specific traumatic incident" test only applies to back injuries, not to shoulder injuries. Therefore, plaintiff was required to show that his trapezius strain was caused by an accident and not "an event that involves both an employee's normal work routine and normal working conditions." *Renfro*, 172 N.C. App. at 180, 616 S.E.2d at 322 (internal quotation marks and citation omitted).

Here, the evidence demonstrated that plaintiff's trapezius strain was caused by his shoulder injury and that his shoulder injury, in turn, occurred while performing his normal work routine under normal working conditions. Specifically, plaintiff, while lifting a hose in a standard fashion after unloading gasoline, felt a snapping sen-

sation in his shoulder, which Dr. Bloem explained resulted in irritation of plaintiff's labrum and, likely, a rotator cuff tear. Only after feeling the snapping sensation did plaintiff throw the hose in an unusual manner. Although Dr. Bloem testified that plaintiff's "having to throw [the hose] back on the trough in an unusual manner" more likely than not caused plaintiff's carpal tunnel syndrome, there is no evidence that this caused or aggravated plaintiff's shoulder injury. Instead, the shoulder injury appears to have occurred while plaintiff was lifting the hose in a normal manner, and therefore, the Full Commission's finding that plaintiff's shoulder injury was not the result of an "injury by accident" as defined in section 97-2(6) is supported by competent evidence. This finding, in turn, supports the conclusion that plaintiff did not sustain a compensable injury to his shoulder. *See, e.g., Harrison v. Lucent Techs.*, 156 N.C. App. 147, 153, 575 S.E.2d 825, 829, *disc. rev. denied*, 357 N.C. 164, 580 S.E.2d 365 (2003). Accordingly, plaintiff's assignment of error is overruled.

**[3]** Plaintiff next contends that the Full Commission erred by denying plaintiff disability benefits after 3 May 2004. We hold that the Full Commission failed to make sufficient findings on this issue, and therefore, we remand for additional findings of fact.

" 'Disability,' within the North Carolina Workers' Compensation Act, 'means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.' " *Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 493 (2005) (quoting N.C. Gen. Stat. § 97-2(9)). The burden of proving a disability as well as the extent of the disability lies with the employee seeking compensation under the Act. *See id.* (citing *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 185, 345 S.E.2d 374, 378 (1986)). In order for a plaintiff to establish a claim for disability, whether temporary or permanent, under the Act,

the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). This Court has explained that

[t]he employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted). "If an employee presents substantial evidence he or she is incapable of earning wages, the employer must then 'come forward with evidence to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations.' " *Barber v. Going W. Transp. Inc.*, 134 N.C. App. 428, 435, 517 S.E.2d 914, 920 (1999) (quoting *Kennedy v. Duke Univ. Med. Ctr.*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990)).

In the case *sub judice*, plaintiff has confined his argument to the second and third prongs of the *Russell* test. Dr. Bloem testified that plaintiff's "cervical spine injury . . . had resolved by the time [he] examined [plaintiff] on May 3rd, 2004," and that "there was no permanent impairment associated with that cervical spine injury." Although Dr. Bloem assigned plaintiff certain work restrictions, the record demonstrates that plaintiff was capable of at least some work after 3 May 2004. Therefore, for plaintiff to demonstrate disability beyond 3 May 2004, plaintiff must have satisfied his burden under the balance of the second and third prongs of the *Russell* test—specifically, plaintiff must have demonstrated either that (1) he made a reasonable effort to obtain employment but was unsuccessful, or (2) any effort to obtain employment would have been futile because of preexisting conditions. *See Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457. In its Opinion and Award, however, "the Commission made no findings regarding either of these two factors. Plaintiff argues he presented evidence that he sought employment, but was unsuccessful in obtaining a job. The Commission entered no findings of fact on this evidence." *Workman v. Rutherford Elec. Membership Corp.*, 170 N.C. App. 481, 490, 613 S.E.2d 243, 250 (2005). Accordingly, we must remand to the Full Commission to make findings concerning plain-

tiff's disability, pursuant to the second and third prongs of the *Russell* test, for the period following 3 May 2004. *See Britt,* 185 N.C. App. at 685, 648 S.E.2d at 922.

**[4]** Finally, plaintiff contends that the Full Commission erred by failing to award plaintiff attorneys' fees as a result of defendants' unreasonable defense of his claim. We disagree.

Pursuant to North Carolina General Statutes, section 97-88.1, "[i]f the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them." N.C. Gen..Stat. § 97-88.1 (2005). "The purpose of this section is to prevent 'stubborn, unfounded litigiousness which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to injured employees.' " *Troutman v. White & Simpson, Inc.,* 121 N.C. App. 48, 54, 464 S.E.2d 481, 485 (1995) (quoting *Beam v. Floyd's Creek Baptist Church,* 99 N.C. App. 767, 768, 394 S.E.2d 191, 192 (1990)), *disc. rev. denied,* 343 N.C. 516, 472 S.E.2d 26 (1996). "The decision whether to award or deny attorney's fees rests within the sound discretion of the Commission and will not be overturned absent a showing that the decision was manifestly unsupported by reason." *Thompson v. Fed. Express Ground,* 175 N.C. App. 564, 570, 623 S.E.2d 811, 815 (2006).

In the instant case, the deputy commissioner found that defendants' defense of the claim was unreasonable and awarded attorneys' fees pursuant to section 97-88.1. The Full Commission, however, is not bound by a deputy commissioner's findings and award, *see Strezinski v. City of Greensboro,* 187 N.C. App. 703, 709, 654 S.E.2d 263, 267 (2007), and here, the Full Commission disagreed with the deputy commissioner and found that defendants did "not engage[] in stubborn, unfounded litigiousness during the course of defending this claim." The Full Commission, therefore, properly concluded that "defendants are not subject to sanctions in the form of attorney's fees." On appeal, plaintiff has failed to cite any authority supporting his contention that defendants' defense was unreasonable or that the Commission's decision was an abuse of discretion, *see* N.C. R. App. P. 28(b)(6) (2006), and "[o]ur review of the record fails to disclose an abuse of discretion" on the issue of attorneys' fees pursuant to section 97-88.1. *Thompson,* 175 N.C. App. at 570, 623 S.E.2d at 815; *accord Donnell v. Cone Mills Corp.,* 60 N.C. App. 338, 344, 299 S.E.2d

436, 439, *disc. rev. denied*, 308 N.C. 190, 302 S.E.2d 243 (1983). There-
fore, this assignment of error is overruled.

Accordingly, we remand the instant matter to the Full Commis-
sion for findings and conclusions as to the second and third prongs of
the *Russell* test with respect to plaintiff's alleged disability following
3 May 2004, and we affirm the remainder of the Full Commission's
Opinion and Award.

Affirmed in part; Remanded in part.

Judges TYSON and ARROWOOD concur.