TIMOTHY K. RAPER, Employee, Plaintiff,
v.
MANSFIELD SYSTEMS, INC., Employer, FEDERATED MUTUAL INSURANCE COMPANY, Carrier, Defendants.
No. COA08-1099
Court of Appeals of North Carolina.
Filed April 7, 2009
This case not for publication
Anderson Law Firm, by Michael J. Anderson, for plaintiff-appellant.
Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Tonya Davis Jallow and Susan J. Vanderweert, for defendant-appellees.
ROBERT N. HUNTER, Jr., Judge.
Timothy K. Raper ("plaintiff") appeals from an Opinion and Award of the Full Commission of the North Carolina Industrial Commission ("Full Commission") amending its previous Opinion and Award entered 2 February 2007. We affirm.

I. Background
This Court previously summarized the background of this case as follows:
Plaintiff was employed by [Mansfield Systems, Inc. ("defendant-employer")] as a driver of gasoline tankers. On 28 May 2003, after filling a gasoline storage tank in his usual manner, plaintiff reached down to pick up the hose and, when he was approximately fifty percent upright, experienced a snapping sensation in his right shoulder area. Upon feeling the snapping sensation, instead of placing the hose in the trough in his usual manner, plaintiff threw the hose onto the trough to avoid dropping it and the possibility of not being able to pick it up again. Plaintiff described the trough as being higher than his shoulders.
Thereafter, plaintiff reported the incident to defendant-employer, and was instructed to seek treatment at Smithfield Urgent Care ("the Urgent Care"). At the time, plaintiff's symptoms included pain extending from the right side of his neck down into his right shoulder and hand. Plaintiff also experienced numbness and tingling of the second, third, and fourth digits on his right hand as well as weakness in his right arm. Previously, plaintiff had presented to the Urgent Care, but plaintiff's medical records from the Urgent Care disclosed no prior pain in his neck, right shoulder, or right hand and no prior numbness or tingling in the fingers on his right hand.
On 29 May 2003, plaintiff presented to the Urgent Care, and medical records from that date describe plaintiff's symptoms in his right trapezius muscle and cervical spine, with the right side being worse than the left. The medical records also indicate that plaintiff was able to rotate his neck and head only half as much as normal. On 2 June 2003, plaintiff returned to the Urgent Care, and was diagnosed as having sustained a cervical sprain and injury to his trapezius muscle. On 9 June 2003, plaintiff again presented to the Urgent Care, and was diagnosed as having cervical radiculopathy.
On 26 September 2003, plaintiff presented to Dr. Carol B. Siegel ("Dr. Siegel") at Raleigh Orthopaedic Clinic, who noted that plaintiff was experiencing numbness and tingling in the fingers on his right hand. Dr. Siegel conducted numerous diagnostic tests, including an electromyography and nerve conduction studies of plaintiff's right upper extremity, and diagnosed plaintiff as having right carpal tunnel syndrome. Dr. Siegel recorded that because plaintiff denied having hand and finger symptoms prior to 28 May 2003, she could attribute his carpal tunnel syndrome only to the injury occurring on that date.
On 3 May 2004, plaintiff presented to Dr. Josephus T. Bloem ("Dr. Bloem"), stating that he was experiencing constant discomfort in his right shoulder and pain in his right wrist. Following his examination, Dr. Bloem diagnosed plaintiff as having right carpal tunnel syndrome and a likely rotator cuff tear. Dr. Bloem stated that there was no manner available to determine the extent of any rotator cuff tear without performing surgery, but with respect to plaintiff's carpal tunnel syndrome, Dr. Bloem recommended that plaintiff attempt conservative therapies before considering surgery. Dr. Bloem opined that plaintiff's right carpal tunnel syndrome was likely the result of a wrist sprain that occurred when plaintiff threw the tanker hose onto the trough on 28 May 2003. Additionally, while acknowledging that plaintiff has diabetes, and the potential relationship between diabetes and carpal tunnel syndrome, Dr. Bloem opined that the trauma of 28 May 2003 was a more likely cause given that plaintiff had symptoms only in his right hand.
Dr. Bloem opined that performing the duties associated with plaintiff's position with defendant-employer would be problematic for plaintiff. He assigned plaintiff restrictions on the use of his right arm, including limitations on over-head work, lifting, pushing, and pulling. Dr. Bloem ultimately assigned plaintiff a ten percent permanent partial impairment rating to his right arm due to the shoulder injury and carpal tunnel syndrome, and he opined that plaintiff has reached maximum medical improvement.
Plaintiff originally filed his claim for the 28 May 2003 injury against Mansfield Oil Co. ("Mansfield Oil") and St. Paul Travelers Insurance Co. ("Travelers"). Travelers initially paid indemnity and medical compensation through 1 October 2003, but on 12 November 2003, Travelers denied compensability of plaintiff's claim on the grounds that plaintiff was not an employee of Mansfield Oil at the time of the accident but instead was an employee of defendant-employer. Plaintiff amended his request for hearing, properly identifying [defendant-employer and its insurance carrier, Federated Mutual Insurance Co. (collectively, "defendants"),] as parties. Defendants filed a response, admitting the employment relationship but denying plaintiff's claim, contending that because Travelers had accepted plaintiff's claim, Travelers was estopped from denying further responsibility for plaintiff's injury. After defendants' response but prior to the hearing, plaintiff reached a settlement with Mansfield Oil and Travelers in the amount of $8,000.00, and this settlement was approved by Deputy Commissioner Bradley W. Houser ("Deputy Commissioner Houser") on 17 August 2005.
A hearing was held before Deputy Commissioner Houser on 28 October 2005, and Deputy Commissioner Houser entered an Opinion and Award in plaintiff's favor on 6 February 2006. Defendants filed notice of appeal to the Full Commission. By Opinion and Award entered 2 February 2007, the Full Commission affirmed with modifications Deputy Commissioner Houser's Opinion and Award; Commissioner Thomas J. Bolch dissented without written opinion. In its Opinion and Award, the Full Commission found that on 28 May 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident to his cervical spine. The Full Commission also found that plaintiff sustained a compensable injury when he threw the hose and sprained his wrist, resulting in carpal tunnel syndrome. With respect to plaintiff's shoulder injury, however, the Full Commission found that (1) the medical evidence failed to show that plaintiff's right shoulder injury was related to the injury by accident or the specific traumatic incident that occurred on 28 May 2003; and (2) the shoulder injury was not the result of an injury by accident arising out of and in the course of his employment. Thereafter, both plaintiff and defendants filed timely notice of appeal.
Raper v. Mansfield Sys., ___ N.C. App. ___, ___, 657 S.E.2d 899, 902-03 (2008).
On appeal, a unanimous panel of this Court held: (1) Dr. Bloem's testimony constituted competent evidence of the causation of plaintiff's carpal tunnel syndrome; (2) the Full Commission's conclusion of law that plaintiff did not sustain a compensable injury to his shoulder was supported by its findings of fact; (3) the Full Commission failed to make sufficient findings to support its denial of disability benefits after 3 May 2004; and (4) the Full Commission properly denied plaintiff his attorney's fees. See id. at ___, 657 S.E.2d at 904-08. This Court "remand[ed] the instant matter to the Full Commission for findings and conclusions as to the second and third prongs of the Russell test with respect to plaintiff's alleged disability following 3 May 2004, and . . . affirm[ed] the remainder of the Full Commission's Opinion and Award." Id. at ___, 657 S.E.2d at 908.
On remand, the Full Commission "amend[ed] the February 2, 2007 Opinion and Award at Findings of Fact 9, 15, 16 and Conclusion of Law 4." The Full Commission did not change its award. Plaintiff appeals.

II. Issues
Plaintiff argues the Full Commission erred when it failed to find that he "satisfied the second and/or third prong(s) of the Russell test."

III. Standard of Review
"[A]ppellate review of an award from the Commission is generally limited to two issues: (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." "In weighing the evidence, the Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and the Commission may reject entirely any testimony which it disbelieves." "The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings." "This Court `does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.'" Additionally, "failure to assign error to the Commission's findings of fact renders them binding on appellate review." "This Court reviews the Commission's conclusions of law de novo."
Id. at ___, 657 S.E.2d at 904 (citations omitted).

IV. Russell Test
Plaintiff argues the Full Commission erred when it denied him benefits after 3 May 2004 "as [he] has engaged in a reasonable but unsuccessful attempt to find suitable employment and/or any attempt to find suitable employment would be futile, and [he] has, therefore, satisfied the second and/or third prongs of the Russell test." We disagree.
Plaintiff challenges the Full Commission's amended findings of fact numbered 9 and 15:
9. Dr. Bloem assigned plaintiff restrictions regarding the use of his right arm, which included the avoidance of over-head work and pushing or pulling with the arm and lifting limitations due to plaintiff's shoulder injury.
. . . .
15. After being released to return to work by Dr. Bloem, plaintiff talked to "buddies" in the trucking industry concerning jobs and made cold calls to potential employers, but did not complete any job applications. In all, plaintiff contacted approximately 12 to 15 employers in a one-year period. Plaintiff stopped looking for work altogether in April 2005 after being awarded Social Security disability payments. Plaintiff was 53 years old at the time he was released to return to work by Dr. Bloem and his only restrictions were based upon his non-compensable shoulder injury. Plaintiff had no health problems that limited his ability to work outside the contested injuries herein addressed.
After a thorough review of Dr. Bloem's deposition, we hold that only that portion of finding of fact numbered 15 which states, "[plaintiff's] only restrictions were based upon his non-compensable shoulder injury[,]" is unsupported by competent evidence. (Emphasis supplied.) Dr. Bloem testified during his deposition as follows:
I have allowed [plaintiff] a ten percent permanent partial impairment rating of the right arm. And that includes, then, the shoulder and the carpal tunnel together.
. . . .
[Y]ou probably have to split that fifty/fifty[] [between the shoulder and the carpal tunnel.]
Findings of fact numbered 9 and the remaining portions of finding of fact numbered 15 are supported by competent evidence and therefore binding upon this Court. We now turn to "`whether the conclusions of law are justified by'" finding of fact numbered 9, those portions of finding of fact numbered 15 supported by competent evidence, and the remaining unchallenged findings of fact. Id. (citation omitted).
On remand, the Full Commission modified its conclusion of law numbered 4 to state:
In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hillard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). In the case at hand, plaintiff has met his burden of proving continuing disability for the period of May 29, 2003 through May 3, 2004. Thereafter, plaintiff has failed to prove continuing disability as he was released to return to work and was capable of working but failed to make a reasonable job search and failed to show that pre-existing conditions made it futile for plaintiff to seek employment. As the result of plaintiff's compensable injuries, plaintiff is entitled to be paid by defendants total disability compensation at the rate of $402.47 per week for the period of October 2, 2003, when former defendants Mansfield Oil Company and St. Paul Travelers Insurance Company stopped paying indemnity, through May 3, 2004, when plaintiff's disability ended. N.C. Gen. Stat. §97-29. Russell v. Lowes Product Distribution, supra.

In Russell, this Court stated:
The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment, (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment, (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment, or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
108 N.C. App. at 765, 425 S.E.2d at 457 (citations omitted).
The Full Commission's conclusion of law numbered 4 and its other unchallenged conclusions of law are justified by its finding of fact numbered 9, those portions of finding of fact numbered 15 supported by competent evidence, and the remaining unchallenged findings of fact. The Full Commission properly denied plaintiff benefits after 3 May 2004 based on plaintiff's failure to meet the second or third prongs of the Russell test. This assignment of error is overruled.

V. Conclusion
Plaintiff failed to meet the second or third prongs of the Russell test established by this Court. See id. at 765, 425 S.E.2d at 457. The Full Commission properly denied plaintiff benefits after 3 May 2004 and its Opinion and Award is affirmed.
Affirmed.
Judges ROBERT C. HUNTER, and CALABRIA concur.
Report per Rule 30(e).