JEFFREY T. LANIER, Employee, Plaintiff v. EDDIE ROMANELLE'S, Employer, KEY RISK MANAGEMENT SERVICES, Carrier, Defendants

No. COA07-1154

(Filed 19 August 2008)

## 1. Workers' Compensation— injury by accident—neck—specific traumatic incident

The Industrial Commission did not err in a workers' compensation case by concluding plaintiff employee's neck injury was not compensable as an injury by accident because: (1) although plaintiff testified that his neck injury arose from a specific traumatic incident, the law required plaintiff to prove by a preponderance of the evidence that his neck injury was the direct result of a specific traumatic incident of the work assigned; (2) the Commission, as fact-finder, was free to reject plaintiff's testimony as to the cause of his neck injury and rely on other testimony of causation; and (3) the Commission expressly relied on a doctor's testimony as to the causation of plaintiff's neck injury, and the doctor acknowledged on cross-examination that he did not have any documented cause for plaintiff's cervical condition and that his opinion on causation was mere speculation.

## 2. Workers' Compensation— occupational disease—synovitis in wrist—trauma in employment

The Industrial Commission did not err in a workers' compensation case by its finding of fact that plaintiff employee's synovitis in his wrist was not compensable as an injury by accident because: (1) although plaintiff contends the Commission misap-

prehended the law since synovitis is a listed occupational disease that did not require plaintiff to show his job placed him at an increased risk for developing the disease, the Commission found that there was no medical evidence of record that plaintiff's employment with defendant employer exposed him to an increased risk of developing a partial scapholunate ligament tear, a disease which was not included on the occupational disease list and for which plaintiff was required to prove it was due to causes and conditions which were characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of employment; (2) N.C.G.S. § 97-53(20) required plaintiff to show that the synovitis was caused by trauma in employment, meaning a series of events in employment occurring regularly, or at frequent intervals, over an extended period of time and culminating in the condition technically known as synovitis; (3) a doctor who examined plaintiff testified that a scapholunate ligament tear normally is caused by an acute injury and not by a repetitive process, and that the synovitis was probably the result of the ligament tear; and (4) although the evidence showed plaintiff's synovitis did result from the tear, the tear was not caused by plaintiff's employment.

**3. Workers' Compensation— occupational disease—ulnar neuropathy—no showing of increased risk**

The Industrial Commission did not err in a workers' compensation case by failing to conclude that plaintiff employee's ulnar neuropathy in his elbow was an occupational disease under N.C.G.S. § 97-53(13) because: (1) there was no evidence that plaintiff was exposed to an increased risk of developing ulnar neuropathy in his job to a far greater degree and in a wholly different manner than is the public generally; (2) at best, plaintiff presented some evidence that repetitive motions such as those he used in his job as a sauté cook could aggravate a pre-existing ulnar neuropathy; (3) the Commission's findings of fact support its conclusion that plaintiff's ulnar neuropathy was not compensable, and plaintiff failed to assign error to those findings, thus making them binding on appeal; and (4) plaintiff did not point to any record evidence that was improperly ignored by the Commission, nor was any found, that plaintiff's ulnar neuropathy existed before he began his employment with defendant or before he lifted the sauté grate on 12 May 2004, and thus, a doctor's opin-

ion that plaintiff quoted in his brief regarding the aggravation of a pre-existing ulnar neuropathy was therefore conjectural and could not have been relied upon by the Commission to conclude it was compensable.

### 4. Workers' Compensation— disability—findings of fact—conclusions of law

Although plaintiff employee contends the Industrial Commission erred in a workers' compensation case by its findings of fact and conclusions of law on all of the issues before the Commission regarding the extent of plaintiff's disability, there was no need for the Commission to address the extent of plaintiff's disability because of its findings and conclusions that plaintiff did not suffer a compensable injury by accident or from a compensable occupational disease.

Appeal by plaintiff from Opinion and Award entered 22 June 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 5 March 2008.

*Brumbaugh, Mu & King, P.A., by Leah L. King, for plaintiff-appellant.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Erica B. Lewis and Erin T. Collins, for defendant-appellees.*

STROUD, Judge.

Plaintiff appeals from the Opinion and Award of the Industrial Commission entered on 22 June 2007, denying benefits to plaintiff based upon its conclusions that plaintiff sustained neither an injury by accident nor a compensable occupational disease arising out of and in the course of his employment. For the reasons stated herein, we affirm.

### I. Background

Plaintiff began his employment with defendant-employer Eddie Romanelle's[1] in 1996 as a part-time sauté cook. He became a full-time employee in about May 1999, working as kitchen supervisor. In this

---

1. The employer is identified as Atlantic Quest Corporation on the initial filings and on the deposition transcripts. Later, for no apparent reason, the employer's name changes to Eddie Romanelle's. As best we can tell, Atlantic Quest Corporation was doing business as Eddie Romanelli's restaurant. We also note that "Romanelle's" appears to be misspelling of "Romanelli's."

LANIER v. EDDIE ROMANELLE'S

[192 N.C. App. 166 (2008)]

role, he was responsible for all of the kitchen activities as well as remaining an active cook. He spent most of his ten hour shifts working as a sauté cook. At the end of each shift, as part of his normal job duties, plaintiff removed and cleaned two sauté grates which weighed approximately forty pounds each. On 12 May 2004, plaintiff was lifting a sauté grate in his usual manner when he allegedly experienced a "shocking type sensation" followed by numbness in his left arm and hand. Plaintiff finished his shift but reported his alleged injury the next day, complaining that his arm felt "dead." Plaintiff then began a complicated course of treatment with several doctors over the next two years which resulted in at least four diagnoses involving his cervical spine, left arm, and wrist.

Plaintiff filed Form 18 with the North Carolina Industrial Commission on or about 20 August 2004 alleging that he had injured his "left hand and arm" as a result of "lifting [a] sauté grate from the grill" "about 5/12/04[.]" He filed an amended Form 18 on 29 July 2005, alleging additional injury to his neck arising from the same incident. Defendants denied compensability on the grounds that plaintiff had not been injured by accident at work and had no compensable occupational disease. The case was heard by Deputy Commissioner Bradley W. Houser on 23 August 2005. On 12 October 2006 the deputy commissioner concluded that plaintiff's injuries and diseases had not been caused by his employment with defendant-employer and denied workers' compensation benefits accordingly. Plaintiff appealed to the Full Commission.

The Full Commission heard plaintiff's case on 16 March 2007. In an Opinion and Award entered 22 June 2007, the Full Commission also concluded that plaintiff's injuries and diseases had not been caused by his employment with defendant-employer and denied workers' compensation benefits. Plaintiff appeals.

## II. Issues

The argument in plaintiff's brief focuses primarily on the long course of plaintiff's medical treatment which he alleges arose from one incident, lifting a sauté grate, on 12 May 2004. His treatment was complex as he was eventually diagnosed with and treated for four separate medical conditions involving three parts of his body: a cervical radiculopathy in his neck, a ulnar neuropathy in his left elbow, and a scapholunate tear and synovitis in his left wrist.

Plaintiff's brief conflates the various theories and standards for injury by accident, specific traumatic incident, and occupational dis-

ease as to all of plaintiff's four conditions. However, after we have sorted out all of the various theories and contentions, the real issue is causation of plaintiff's injuries, not whether he suffered from the alleged injuries or conditions.

Plaintiff primarily argues that the Commission erred by concluding that plaintiff's neck, wrist, and elbow conditions were not caused by a compensable injury by accident or occupational disease because the Commission's findings of fact were not supported by competent evidence and its conclusions were based upon unsupported findings and misapprehension of applicable law. His specific contentions are: (1) the neck injury was compensable as an injury by accident under N.C. Gen. Stat. § 97-2(6) because it arose from a specific traumatic incident; (2) the elbow injury is compensable because ulnar neuropathy meets the criteria for an unlisted occupational disease set forth in N.C. Gen. Stat. § 97-53(13); and (3) the wrist injuries are compensable as occupational diseases because synovitis is specifically listed in N.C. Gen. Stat. § 97-53(20). Plaintiff additionally argues that the Commission erred by failing to make findings of fact and conclusions of law on the extent of plaintiff's disability.

### III. Standard of Review

In order to prevail on a disability claim for workers' compensation, the plaintiff bears the burden of proving by a preponderance of the evidence the existence and extent of his disability, *Fletcher v. Dana Corporation*, 119 N.C. App. 491, 494, 459 S.E.2d 31, 34, *disc. review denied*, 342 N.C. 191, 463 S.E.2d 235 (1995), and that the disability was caused by a disease or injury reasonably related to his employment. *Holley v. ACTS, Inc.*, 357 N.C. 228, 231-32, 581 S.E.2d 750, 752 (2003). In deciding whether a plaintiff has met his burden, the Industrial Commission must consider all competent evidence presented, *Weaver v. American National Can Corp.*, 123 N.C. App. 507, 510, 473 S.E.2d 10, 12 (1996), and make specific findings of fact to support its conclusions for all "crucial questions." *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 596, 290 S.E.2d 682, 684 (1982).

"The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (citation and quotation marks omitted). The Commission is given deference as finder of fact on appeal to this Court, and if "there is some evidence of substance which directly or by reasonable inference tends to support the findings, this Court is bound by such evidence, even though there is

evidence that would have supported a finding to the contrary." *Ard v. Owens-Illinois*, 182 N.C. App. 493, 496, 642 S.E.2d 257, 259-60, *disc. review denied*, 361 N.C. 690, 652 S.E.2d 254 (2007) (citations and quotation marks omitted). The Commission's legal conclusions will not be disturbed on appeal if the Commission has correctly apprehended the relevant law, *Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005), and "there are sufficient findings of fact based on competent evidence to support the [Commission's] conclusions, [even if there are also] erroneous findings which do not affect the conclusions." *Estate of Gainey v. Southern Flooring and Acoustical Co.*, 184 N.C. App. 497, 503, 646 S.E.2d 604, 608 (2007) (citation and quotation marks omitted).

## IV. Injury by Accident

[1] Plaintiff first contends that the Commission erred in concluding his neck injury was not compensable as an injury by accident. Plaintiff assigns error to the Commission's fifteenth and sixteenth findings of fact:

> 15. On the issue of causation, Dr. Brown initially testified in his deposition that if plaintiff never experienced neck problems prior to May 12, 2004, then he was comfortable stating to a medical degree of probability that lifting of the grate as described by plaintiff caused the neck condition for which surgery was performed. Dr. Brown further testified that the lifting incident could have aggravated a pre-existing cervical condition. However, upon further questioning, Dr. Brown stated that he did not have any documented cause for plaintiff's cervical condition and that, ultimately, any causation opinion he rendered was "mere speculation."

> 16. There is insufficient competent medical evidence of record upon which to find by the greater weight that the incident at work on May 12, 2004 was the cause of the neck condition for which plaintiff underwent surgery.

Plaintiff argues "the Commission has made findings against the competent evidence of record on the compensability of the neck injury" because:

> In the case at hand, the plaintiff was able to pin down exactly what he was doing when he injured his neck, arm and wrist. He described a severe, sharp shooting pain upon the lifting of the

grate. This is the specific traumatic incident and nothing further is required by the law.

We disagree.

Generally, a compensable "injury by accident" requires a showing of an unusual and unanticipated event which is not part of an "employee's normal work routine and normal working conditions[.]" *Raper v. Mansfield Sys., Inc.*, 189 N.C. App. 277, 284, 657 S.E.2d 899, 906 (2008) (citation and quotation omitted). "[O]nce an activity, even a strenuous or otherwise unusual activity, becomes part of the employee's normal work routine, an injury caused by such activity is not the result of an interruption of the work routine or otherwise an 'injury by accident' under the Workers' Compensation Act." *Bowles v. CTS of Asheville*, 77 N.C. App. 547, 550, 335 S.E.2d 502, 504 (1985). However, in the case of a back injury, the requirement of an unusual circumstance is relaxed and an injury by accident may also be proved "where injury to the back arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned[.]" N.C. Gen. Stat. § 97-2(6) (2005); *Raper*, 189 N.C. App. at 284, 657 S.E.2d at 906.

Although plaintiff testified that his neck injury[2] arose from "a specific traumatic incident," this was not all that the law required. The law required plaintiff to prove by a preponderance of the evidence, *Holley*, 357 N.C. at 232, 581 S.E.2d at 752, that his neck injury was "the direct result of a specific traumatic incident of the work assigned," N.C. Gen. Stat. § 97-2(6). The Commission, as finder of fact, was free to reject plaintiff's testimony as to the cause of his neck injury and rely on other testimony of causation. *Cross v. Blue Cross/Blue Shield*, 104 N.C. App. 284, 288, 409 S.E.2d 103, 105 (1991). Because the Commission is afforded deference as finder of fact, our review is limited to whether the Commission's findings on causation were supported by competent evidence in the record. *Id.* at 285, 409 S.E.2d at 104.

The Commission's fifteenth finding of fact expressly relies on Dr. Brown's testimony as to the causation of plaintiff's neck injury. Dr. Brown testified on direct examination as follows:

---

2. Plaintiff consistently refers to his cervical radiculopathy as a "neck injury." However, defendants do not dispute that cervical radiculopathy is a back injury for purposes of N.C. Gen. Stat. § 97-2(6) or argue that the "specific traumatic incident" standard is inapplicable. *See Raper*, 189 N.C. App. at 284, 657 S.E.2d at 906 ("Defendants concede that plaintiff's injury to his cervical spine was a back injury [subject to the] specific traumatic incident [standard]." (Original brackets and quotation marks omitted.)).

Q: Okay. Assuming the facts I've provided to you are true, do you have an opinion to a medical degree of probability as to whether the lifting incident as described by Mr. Lanier on May 12, 2004 was a cause for the C4-C5, C5-C6 problem which required the anterior cervical diskectomy and fusion?

A: It's a tough question. It certainly could be—it certainly could be a—is it possible; yes. Is it a certainty; no. Could it be a contributing factor; I would say probably so.

Q: And what would your opinion be to a medical degree of probability versus certainty?

A: I don't know. I don't know if I can answer that question. It's a year and a half before I saw him. I didn't—because I didn't know [injury from lifting sauté grates] was a possibility I didn't ask him specifically about it, nor did he tell me. Can I say that this is too difficult a question to answer?

It would be difficult to interpret this testimony as providing evidence that plaintiff's neck injury was caused by plaintiff's lifting of the grates on 12 May 2004. However, even if it could be so construed, Dr. Brown further acknowledged on cross examination that he did not have any documented cause for plaintiff's cervical condition and that his opinion on causation was "mere speculation." The Commission considered Dr. Brown's testimony on both direct and cross examination and did not err in finding that the plaintiff's cervical condition was not caused by lifting the sauté grate. The Commission's findings as to the cause of plaintiff's neck injury were therefore based upon competent evidence. This assignment of error is without merit.

V. Occupational Disease

A. Synovitis in Wrist

[2] Plaintiff assigns error to the Commission's nineteenth finding of fact:[3]

19. Although based upon Dr. Moore's expert opinion, plaintiff's partial ligament tear was causally related to plaintiff's job duties, there is no medical evidence of record that plaintiff's employment with defendant-employer exposed him to an increased risk

3. Plaintiff also assigned error to the Commission's twentieth finding of fact. However, because plaintiff did not bring this assignment of error forward and argue it in the brief it is deemed abandoned. N.C.R. App. P. 28(b)(6).

of developing a partial scapholunate ligament tear. There also is no medical evidence of record that plaintiff's synovitis was caused by trauma in the employment, in that the medical evidence showed that the abnormality of the ligament tear within the wrist led to the synovitis. Therefore, the Commission finds by the greater weight of the medical evidence that these conditions are not compensable occupational diseases.

Plaintiff argues the Commission misapprehended the law because synovitis is a listed occupational disease and a workers' compensation plaintiff therefore does not need to show "his job placed him at an increased risk for developing the disease[,]" as is required for unlisted occupational diseases under N.C. Gen. Stat. § 97-53(13). Plaintiff correctly states that N.C. Gen. Stat. § 97-53(20) deems "[s]ynovitis, caused by trauma in employment" as an occupational disease. Plaintiff then argues that the record contains evidence that his wrist synovitis was caused by the trauma of lifting sauté grates over the years of his employment with defendant-employer, and if the Commission had used the correct standard, it would have found that plaintiff's synovitis was compensable as an occupational disease.

However, plaintiff has misapprehended the Commission's findings. The Commission found that "there is no medical evidence of record that plaintiff's employment with defendant-employer exposed him to an increased risk of developing a *partial scapholunate ligament tear*[,]" a disease which is not included on the list and for which plaintiff was required to prove it was "due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." N.C. Gen. Stat. § 97-53(13) (2005).

Though synovitis is identified on the list of occupational diseases, N.C. Gen. Stat. § 97-53(20), inclusion on the list did not "relax[] the fundamental principle which requires proof of causal relation between injury and employment. . . . [A]n occupational disease [is not compensable] unless it [is] shown that the disease was incident to or the result of the particular employment in which the work[er] was engaged." *Duncan v. Charlotte*, 234 N.C. 86, 91, 66 S.E.2d 22, 25 (1951). Accordingly, N.C. Gen. Stat. § 97-53(20) requires a plaintiff to show that the synovitis was "caused by trauma in employment." The "phrase, 'caused by trauma in employment' . . . necessarily mean[s] a series of events in employment occurring regularly, or at frequent intervals, over an extended period of time, and culminating in the

condition technically known as []synovitis." *Henry v. A. C. Lawrence Leather Co.*, 234 N.C. 126, 131, 66 S.E.2d 693, 697 (1951). Furthermore, a plaintiff may not bootstrap a disease which results from a prior injury without appropriate medical testimony to link the disease to a *compensable* injury. *See Coe v. Haworth Wood Seating*, 166 N.C. App. 251, 254, 603 S.E.2d 549, 551 (2004) (affirming an award of compensation for a left arm injury when a medical expert testified that the left arm injury was caused by overuse of the left arm while working under restrictions imposed because of a compensable right arm injury).

Dr. Moore examined plaintiff in November 2005. According to Dr. Moore, a scapholunate ligament tear normally is caused by an acute injury, not by a repetitive process. He testified that "the synovitis is probably a result of the [partial scapholunate] ligament tear." Dr. Moore also testified that plaintiff had given a history of wrist pain dating back to 2002, and he had no way of knowing whether the scaphoid injury pre-dated the 12 May 2004 incident. He further testified that the likelihood of a scapholunate ligament tear from "pure[ly] lifting" the grate "would be low." The Commission's nineteenth finding quoted *supra* is therefore fully supported by Dr. Moore's testimony and binding on appeal.

In sum, the evidence shows plaintiff's synovitis did result from the tear, but the Commission found that the tear was not caused by plaintiff's employment. The Commission therefore applied the correct standard to plaintiff's synovitis under N.C. Gen. Stat. § 97-53(20) and found based upon the evidence that the synovitis was caused not by "trauma in employment," but as a consequence of the scapholunate tear, a condition which it properly evaluated under N.C. Gen. Stat. § 97-53(13) and determined was not caused by plaintiff's employment. This assignment of error is without merit.

B. Ulnar Neuropathy in Elbow

[3] Plaintiff contends the Commission erred in failing to conclude that his ulnar neuropathy was an "occupational disease" under N.C. Gen. Stat. § 97-53(13). Again, we disagree.

Plaintiff specifically argues:

In regards to the plaintiff's ulnar neuropathy for which he primarily treated with Dr. Bahner, the Commission erred by finding that there was no evidence that plaintiff's job with the defendant employer exposed him to an increased risk of developing these

conditions [and] that the plaintiff did not contract a compensable occupation [sic] disease pursuant to N.C. Gen. Stat. § 97-53(13).

. . . .

Dr. Bahner [said] that he could state to a medical degree of certainty that "a job of the labor and repetitive action and use that he described and related to me and that I have observed by being a patron in the restaurant, by the way, could aggravate an existing ulnar neuritis or ulnar neuropathy."

. . . .

[Therefore, t]he Commission erred on this issue and should be reversed with a finding that the plaintiff's employment significantly aggravated his pre-existing ulnar condition and it is therefore compensable.

N.C. Gen. Stat. § 97-53 lists twenty-eight different types of occupational diseases and includes provision for compensability of an unlisted disease not in the list, if the disease "is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." N.C. Gen. Stat. § 97-53(13). In other words, for an unlisted disease to be deemed an "occupational disease" under N.C. Gen. Stat. § 97-53(13), the plaintiff must show that he "was exposed in his employment to the *risk* of contracting [the disease] in a far greater degree and in a wholly different manner than is the public generally." *Booker v. Duke Medical Center*, 297 N.C. 458, 475, 256 S.E.2d 189, 200 (1979) (emphasis added, citation and quotation marks omitted). Furthermore, in addition to showing that the disease should be deemed an "occupational disease" pursuant to N.C. Gen. Stat. § 97-53(13), plaintiff bears the burden of proving that his contraction of the disease was caused by his employment rather than some other means. *Booker* at 475-76, 256 S.E.2d at 200 (citing *Duncan* at 91, 66 S.E.2d at 25).

On careful review of the record, we find no evidence that plaintiff was exposed to an increased risk of developing ulnar neuropathy in his job to a "far greater degree and in a wholly different manner than is the public generally." *Booker*, 297 N.C. at 475, 256 S.E.2d at 200 (citation and quotation marks omitted). At best, plaintiff presented some evidence that repetitive motions such as those he used in his job as a sauté-cook could aggravate a preexisting ulnar neuropathy,

but no evidence comparing plaintiff's job duties or his development of the neuropathy to the manner and degree of the development of this same disease as it occurs in the general public.

The Commission's tenth and eleventh findings state in pertinent part:

10. . . . The therapist reported to Dr. Bahner that plaintiff had no swelling or discoloration, but demonstrated a lot of facial grimacing with attempted use. Dr. Bahner testified that this supported his opinion that plaintiff's reports of symptoms might be out of proportion to the objective medical evidence.

11. At his deposition Dr. Bahner was unable to state with medical certainty that plaintiff's job duties caused the ulnar neuropathy, but did give an opinion that the labor and repetitive action of plaintiff's job could aggravate an existing ulnar neuritis or neuropathy.

Plaintiff did not assign error to either of those findings; therefore they are binding on appeal, *Gainey*, 184 N.C. App. at 501, 646 S.E.2d at 607, and they support the Commission's conclusion that plaintiff's ulnar neuropathy was not compensable.

Plaintiff also has not pointed us to any record evidence which was improperly ignored by the Commission, and we find none, that plaintiff's ulnar neuropathy existed before he began his employment with defendant-employer or before he lifted the sauté grate on 12 May 2004. Dr. Bahner's opinion which plaintiff quoted in his brief, *supra*, as to aggravation of a pre-existing ulnar neuropathy was therefore conjectural and could not have been relied on by the Commission to conclude plaintiff's ulnar neuropathy was compensable. *Seay v. Wal-Mart Stores, Inc.*, 180 N.C. App. 432, 437, 637 S.E.2d 299, 303 (2006) ("An expert's opinion that was solicited through the assumption of facts unsupported by the record is entirely based on conjecture."). Without competent evidence in the record that plaintiff's ulnar neuropathy was caused by his employment with defendant-employer, we conclude that this assignment of error is also without merit.

## VI. Extent of Disability

[4] Plaintiff last argues that the Commission failed to make findings of fact and conclusions of law on all of the issues that were before the Commission, specifically as to the extent of plaintiff's disability. However, given our ruling above that the Commission did not err

by its findings and conclusions that plaintiff did not suffer a compensable injury by accident or from a compensable occupational disease, there was no need for the Commission to address the extent of plaintiff's disability. There is likewise no need for us to address this issue.

VII. Conclusion

The Industrial Commission concluded that plaintiff had not proven that any of his diseases or injuries resulted from plaintiff's employment with defendant-employer. Because its conclusions were based on correct apprehension of the law and supported by its findings of fact which in turn were supported by competent evidence, we affirm the Commission's 22 June 2007 Opinion and Award.

AFFIRMED.

Judges HUNTER and ELMORE concur.