WILLIAM DOBSON, Employee, Plaintiff,
v.
THE SALVATION ARMY, Employer, CHESTERFIELD SERVICES, INC., Carrier, Defendants.
No. COA08-1425
Court of Appeals of North Carolina
Filed October 6, 2009
This case not for publication
David Gantt for plaintiff-appellee.
Rudisill, White & Kaplan, P.L.L.C., by Bradley H. Smith, for defendant-appellants.
ROBERT N. HUNTER, Jr., Judge.
In an Opinion and Award filed 28 July 2008, the Full Commission of the North Carolina Industrial Commission ("Full Commission") found that William Dobson's ("plaintiff") pre-existing depression was aggravated by a back injury occurring during the course of his employment with The Salvation Army ("employer"). The Full Commission accordingly awarded plaintiff past and continuing temporary disability compensation and medical expenses. From employer's appeal, we affirm the award of the Full Commission.
In December 2003, plaintiff began working for employer in Asheville, North Carolina, as a bell ringer during the Christmas holiday season. Prior to his employment with employer, plaintiff had received long-term treatment for depression and anxiety stemming from a 20-year history of drug and alcohol addiction. However, as a result of an intervention earlier in 2003 by Major James Hipps, employer's spiritual leader in Annandale, Virginia, plaintiff relocated to Asheville in order to participate in a residential substance abuse program at Western Carolina Mission. While working for employer, plaintiff was provided an hourly wage, room, board, and food.
In January 2004, plaintiff changed positions several times with employer, and became a custodian for one to two months before being promoted to a store manager position for employer's Patton Avenue branch in downtown Asheville. Plaintiff's duties as manager "included loading and unloading donations, keeping merchandise stocked and rotated, supervising other workers, maintenance and cleaning[.]" Shortly after being promoted to manager, the stress of these new responsibilities manifested by plaintiff's experiencing a recurrence of anxiety and depression. Plaintiff became concerned that the "job was putting a tremendous amount of stress" on him, which resulted in plaintiff's relapse into substance abuse in early June 2004. Major Hipps again intervened to assist plaintiff by providing a place to stay for two weeks to help him recover from the relapse. After plaintiff's stay with Major Hipps, he returned to Asheville in late June 2004.
On 19 July 2004, plaintiff suffered a back injury while loading a refrigerator and a sofa on the back of a truck at employer's Patton Avenue branch. The pain was not instantly severe, and plaintiff continued to work with employer as a manager while initially believing that the pain in his lower back was a muscle pull. During this same time, plaintiff also spent three and a half days building a small shed by himself.
The back pain quickly worsened during the weeks following plaintiff's work injury, and eventually the unfortunate convergence of past substance abuse, pain, and stress resulted in plaintiff's sustaining a total "emotional breakdown." On 31 July 2004, plaintiff presented to Sisters of Mercy Urgent Care in Asheville complaining that he had not slept in two weeks and that he was suffering from stress. Doctors at the urgent care facility diagnosed plaintiff with anxiety and prescribed him Xanax. The next day, plaintiff presented to the emergency room at St. Joseph's Hospital in Asheville, where hospital records indicate that he had smoked cocaine the previous two days, drank a twelve-pack of beer that afternoon, and taken ten 1 mg Xanax pills over the prior six hours. Plaintiff was then moved to Copestone Psychiatric Services ("Copestone") in Asheville later the same day.
Plaintiff was examined by Dr. Anthony Weisenberger on admission to Copestone. Dr. Weisenberger noted that plaintiff presented with a 0.14% blood alcohol level, and plaintiff stated to the doctor "that he had experienced racing thoughts and was hyperactive for the last month or so [making him] becom[e] irritable and agitated." As a result of the relapse, plaintiff further claimed that his depression had resurged, and that he suffered from lower back pain which radiated down his left leg and foot. Nurse Nora Mae Wisham noted in plaintiff's intake history that the back pain began approximately two weeks prior to his hospital admission on 1 August 2004.
An MRI was conducted to scan the lumbar area of plaintiff's spine on 3 August 2004. The scan revealed a bulge of the L4-5 disc and a protrusion of the L5-S1 disc "without thecal sac or nerve root contact or deformity." On 4 August 2004, Dr. Steven Stranges examined plaintiff, and noted that while plaintiff's pain was consistent with the symptoms of someone "who had picked up [a] heavy [object,]" the MRI did not reveal any nerve compression near plaintiff's spine. A nerve conduction study performed on 6 August 2004 sustained the same result. Plaintiff was released from Copestone on 13 August 2004, and was eventually taken by his father back to Virginia.
Upon returning to Virginia in August 2004, plaintiff sought counseling from Barbara Maury, a licensed clinical social worker with Bon Secour Employee Assistance Program. At the time of her deposition, Ms. Maury held: a master's degree in social work from the University of Maryland with a concentration from the Employee Assistance Program, a certification as a master's level addiction counselor, a certification as an employee assistance professional, and a certification as a substance abuse professional. Ms. Maury conducted approximately 20 one-hour counseling sessions with plaintiff through April 2005, and opined during her deposition later that "plaintiff suffered from depression" due to "chronic pain." This opinion primarily rested on Ms. Maury's observations of plaintiff's "posture, gait, and emotional stress" during sessions.
On 9 September 2004, plaintiff visited Dr. David L. Durica, an orthopedic surgeon practicing in Portsmouth, Virginia, for the past 35 years. Dr. Durica diagnosed plaintiff "with a possible muscle tear in the lumbar-sacral area and a possible herniated disc at L5S-1." Subsequent to this diagnosis, plaintiff was placed on a physical therapy program. Dr. Durica examined plaintiff's medical records from Asheville, including the prior MRI scan, and recommended surgery to repair the herniation of plaintiff's L5-S1 disc. Dr. Durica further placed plaintiff on restrictions including:
sit no more than 2 hours at one time without breaks, lifting no more than 25 pounds, walk/stand no more than 30 minutes, kneel/squat no more than 30 minutes, no climb[ing] more than 2 flights of stairs, [no] climb[ing] ladders, no [twisting or bending] more than [2 hours], and no overhead use of arms more than 30 minutes and on intermittent basis only.
On 21 September 2004, employer filed a Form 19 informing the Industrial Commission of the 19 July 2004 incident involving plaintiff. According to the Form 19, plaintiff's supervisor, Major Terry Israel, first became aware of plaintiff's back injury on 21 July 2004. Employer denied plaintiff's initial workers' compensation claim via Form 61 on 28 September 2004 citing a "lack of any medical documentation of injury or disability." Employer filed another Form 61 on 6 October 2004 denying plaintiff's claim again, and stated in the form that the "medical evidence point[ed] to congenital and other pre-existing medical problems rather than an injury by accident."
Per Dr. Durica's instructions in September 2004, plaintiff did not work from 9 September 2004 until 29 November 2004, at which time he was released by Dr. Durica to perform "light-duty work." On 11 November 2004, plaintiff filed a Form 33 requesting a hearing on the denial of his workers' compensation claim.
In June 2005, plaintiff started working at a golf range owned by his sister. His duties included running the cash register, landscaping, and retrieving golf balls with a tractor. Plaintiff continued working at the range until it closed for the season in September 2005. When the range reopened on Memorial Day in 2006, plaintiff worked as much as he was able through the 2006 season. When plaintiff was not at the range, he attended Alcoholics Anonymous and Narcotics Anonymous. During this time period, plaintiff did not look for other work due to his pain level and attendance at substance abuse meetings.
On 30 June 2006, plaintiff's claim was heard before Deputy Commissioner Brad Donovan in Asheville. Deputy Commissioner Donovan filed an Opinion and Award on 13 February 2007 denying plaintiff's claim and finding as a fact that plaintiff: (1) "failed to show that the ultimate condition of his back, including the annular bulge at L5-S1, occurred during the 19 July 2004 incident"; and (2) "failed to show that his continuing depression is causally connected to a work-related injury."
Plaintiff filed notice of appeal to the Full Commission. On 28 July 2008, the Full Commission reversed the Deputy Commissioner's Opinion and Award, and found that: (1) "plaintiff suffered an injury by accident to his back arising out of and in the course of his employment with [employer] on July 19, 2004"; and (2) "[t]he July 19, 2004 injury by accident aggravated plaintiff's pre-existing psychological problems."
From the Full Commission's Opinion and Award, employer raises three arguments on appeal: (1) no competent evidence exists in the record to support the Full Commission's findings that plaintiff's injury on 19 July 2004 removed his ability to earn wages in the same or other employment; (2) the Full Commission's conclusion that plaintiff has been and continues to be disabled because of his accident on 19 July 2004 is not supported by sufficient findings of fact; and (3) no competent evidence supports the Full Commission's findings that plaintiff's depression is causally related to the 19 July 2004 injury, and therefore the Full Commission's conclusions of law as to this issue are unsupported.

Analysis
As to employer's first and third issues, the review on appeal in this Court when considering findings of fact by the Full Commission is well established, and requires us only "to determine whether the record contains any [competent] evidence tending to support the finding." Anderson v. Lincoln Constr. Co., 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). Thus, "[t]he Commission's findings of fact may only be set aside in the complete absence of competent evidence to support them." Gore v. Myrtle/Mueller, 362 N.C. 27, 42, 653 S.E.2d 400, 410 (2007). Findings of fact that remain uncontested on appeal are "presumed to be supported by competent evidence[.]" Johnson v. Herbie's Place, 157 N.C. App. 168, 180, 579 S.E.2d 110, 118, disc. review denied, 357 N.C. 460, 585 S.E.2d 760 (2003).
Here, the Full Commission made the following findings now challenged by employer:
23. Ms. Maury opined that the July 19, 2004 injury by accident exacerbated plaintiff's existing depression and would have impacted his ability to work any job that he was physically or mentally able to perform. She opined that plaintiff's severe depressive state was due to his mental reaction to back pain and resultant inability to perform physical labor.
. . . .
26. Plaintiff has shown that his continuing depression is reasonably and significantly connected to his July 19, 2004 work-related injury. The greater weight of the evidence shows that while plaintiff has battled depression for more than twenty (20) years before the July 19, 2004 accident, he possessed the ability to earn wages and hold down employment with defendant-employer until his accident. The July 19, 2004 injury by accident aggravated plaintiff's pre-existing psychological problems.
. . . .
28. The Full Commission finds that plaintiff had the mental and physical ability to perform his job with defendant-employer on July 19, 2004 and the accident on that date removed his ability to earn wages and handle that employment or any other job in the competitive national economy.
We observe that each of these findings addresses the testimony of Ms. Maury and her contention that plaintiff's ability to work was limited by his substance abuse and depression subsequent to the 19 July 2004 injury. As such, because these findings address the issue of causation in a medical context, our review requires us to determine whether Ms. Maury's deposition constitutes expert testimony sufficient to demonstrate that plaintiff's injury aggravated his antecedent depression and anxiety. Gay-Hayes v. Tractor Supply Co., 170 N.C. App. 405, 409, 612 S.E.2d 399, 403 ("expert testimony [is] necessary to provide competent evidence of the cause of an injury"), disc. review denied, 359 N.C. 851, 619 S.E.2d 505 (2005); Morrison v. Burlington Industries, 304 N.C. 1, 18, 282 S.E.2d 458, 470 (1981) ("When a pre-existing, nondisabling, non-job-related condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment[,]. . . then the employer must compensate the employee for the entire resulting disability[.]").
In Ms. Maury's deposition on 18 September 2006, she observed that plaintiff's injury affected his ability to work based on their "many discussions about his career choice, about how he loved to work in construction, [and] that he built houses." She stated that plaintiff's chronic back pain was causing him to be depressed, and that plaintiff's accident at employer's Patton Avenue branch "definitely exacerbated any problems that he may have [had]." Moreover, Ms. Maury testified:
[E]ven though Mr. Dobson's addiction [preceded] his injury, I feel the injury was not due to the addiction; that the depression that came after the injury may have had some overtones of addiction, but it was severe depression in the [substance abuse] when he came to me, and that was because he was in such pain. He could not work. He was totally dependent on others. And that's very hard when you finally had licked something enough  which he had at the Salvation Army program, and he was the manager. He finally was doing things, and then all of a sudden that was taken away from him.
Employer argues that Ms. Maury's testimony is not competent to support the Full Commission's findings of fact, because Ms. Maury does not have the requisite qualifications under our case law to give an expert opinion as to the "cause" of plaintiff's depression after his 19 July 2004 injury. See, e.g., State v. Goode, 341 N.C. 513, 461 S.E.2d 631 (1995) (three-part test applied to determine admissibility of expert testimony). However, the record shows that: (1) employer stipulated that Ms. Maury was an expert as to the areas of "substance abuse and social work" during her deposition on 18 September 2006, and (2) Ms. Maury's deposition was accepted without objection by the Full Commission. In stipulating that Ms. Maury was an expert in "social work" at the deposition, the record shows:
[PLAINTIFF'S COUNSEL:] With your masters of social work . . . are you permitted to make psychological diagnosis and psychological interpretations of people's conditions?
[MS. MAURY:] Yes. . . .
. . . .
[PLAINTIFF'S COUNSEL:] [I]n the States of Virginia and Maryland, are you permitted to give opinions about the source of depression and the origins of a specific depressive and mental health ailment you're treating for?
. . . .
[MS. MAURY:] Yes, I can do that by myself.
. . . .
[PLAINTIFF'S COUNSEL:] I think at this point I would tender her as an expert in the field of substance abuse and social work.
. . . .
[EMPLOYER'S COUNSEL:] I would not have an objection to substance abuse and social work.
These facts in the record show that the parties stipulated Ms. Maury to be an expert as to each finding now challenged by employer concerning plaintiff's depression and substance abuse after his injury, and that Ms. Maury based her opinions on observations during counseling sessions with plaintiff. The record further demonstrates that even if Ms. Maury's deposition did not constitute competent evidence, employer did not raise the issue of Ms. Maury's expert qualifications at the Full Commission, and any objection as to the admissibility of this evidence is therefore waived on appeal. Lathon v. Cumberland Cty., 184 N.C. App. 62, 68, 646 S.E.2d 565, 568 (2007) (applying Rule 10 of the North Carolina Rules of Appellate Procedure in a workers' compensation cause of action). Accordingly, since the findings in the Full Commission's Opinion and Award otherwise show that Ms. Maury's testimony was competent, relevant and supported by personal knowledge, the Full Commission did not err in using this evidence to support its findings of fact. These assignments of error are overruled.
Employer also contends that: (1) the Full Commission's conclusion that plaintiff has been and continues to be disabled as a result of his 19 July 2004 injury is not supported by sufficient findings of fact, and (2) the award of temporary total disability from 19 July 2004 and continuing is erroneous.
As a general rule, we review the Full Commission's conclusions of law de novo. Griggs v. Eastern Omni Constructors, 158 N.C. App. 480, 483, 581 S.E.2d 138, 141 (2003). However, despite the broad scope of this standard of review, conclusions of law will nevertheless remain undisturbed where they are (1) adequately supported by the Full Commission's findings of fact and (2) void of material misapprehensions of the law. Lanier v. Romanelle's, ___ N.C. App. ___, ___, 664 S.E.2d 609, 612 (2008); Clark v. Wal-Mart, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005); see Estate of Gainey v. Southern Flooring & Acoustical Co., 184 N.C. App. 497, 503, 646 S.E.2d 604, 608 (2007).
In its Opinion and Award, the Full Commission concluded that "plaintiff has established that he is physically and mentally unable to work due to his compensable injuries"; and that "[a]s a consequence of the July 19, 2004 injury by accident, plaintiff has been unable to earn wages in the same or other employment from July 19, 2004 and continuing." Based on these conclusions, the Full Commission ordered employer to pay: (1) temporary total disability benefits of $204.06 per week from 19 July 2004 and continuing until further order of the Industrial Commission, (2) medical expenses for plaintiff's back treatment, and (3) expenses for ongoing psychological treatment.
To prove "disability" under our Workers' Compensation Act, an employee-plaintiff must show an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2007). This burden must be supported by the Full Commission finding as a fact:
(1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.
Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). One of the methods by which this burden may be satisfied by an employee is "the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment[.]" Russell v. Lowe's Product Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
Employer claims that Findings of Fact 23, 26, and 28 in the Full Commission's Opinion and Award fail to support the Full Commission's conclusion that "plaintiff has established that he is physically and mentally unable to work due to his compensable injuries." However, as discussed, these findings are supported by competent evidence, and are therefore binding on appeal. Moreover, the Full Commission made further findings unchallenged by plaintiff as to this method of proof:
17. Dr. Durica opined that plaintiff's
July 19, 2004 accident caused his ongoing back problems. Dr. Durica based his opinion on plaintiff's medical history, work history, ten year absence of any medical treatment on his back, onset of pain, and the August 3, 2004 MRI findings. Dr. Durica noted that his opinion was "within reasonable medical certainty." When asked how he was certain that plaintiff did not have a pre-existing back condition, Dr. Durica opined that it would be quite unlikely that plaintiff could endure heavy lifting with such an injury without experiencing symptoms. When asked about plaintiff's ability to build the shed following his back injury, Dr. Durica stated that construction work "would be somewhat difficult to do," but plaintiff had displayed a good attitude and work ethic to return to work when he was able to do so.
. . . .
19. Plaintiff's employment with his sister was a job that permitted him to work as much as he could. Since plaintiff's back pain and ability to work was uncertain and limited, Ms. Newman was forced to hire substitute workers as a "cushion" for the times that he was unable to work due to physical pain. He did not work regular hours that would be required in a job in the competitive national economy.
20. The Full Commission finds that plaintiff's job with his sister does not represent work that is available in a competitive workplace and does not represent a resumption and/or return of earning capacity to plaintiff.
These findings in conjunction with Findings of Fact 23, 26, and 28 fully support the Full Commission's conclusions that plaintiff has been and remains unable to work due to physical and psychological difficulties stemming from his 19 July 2004 injury during the course of his employment with employer. Plaintiff offered competent medical evidence that he has been and continues to be unable to earn wages in any employment due to the psychological effects of the 19 July 2004 injury, and the Full Commission properly applied this competent evidence to make findings as to plaintiff's disability under section 97-2(9) of our General Statutes. Moreover, our open review of the record reveals that the Full Commission "correctly apprehended the relevant law" and that "there are sufficient findings of fact based on competent evidence to support the [Full Commission's] conclusions[.]" Lanier, ___ N.C. App. at ___, 664 S.E.2d at 612 (citations and quotation marks omitted). Accordingly, this assignment of error is overruled.
Affirmed.
Chief Judge MARTIN and Judge STEPHENS concur.
Report per Rule 30(e).