***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and upon reconsideration, the Full Commission reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between Plaintiff and Employer-Defendant. *Page 2 
3. ESIS Risk Management was the carrier on the risk for Employer-Defendant.
4. There is no question as to the misjoinder or nonjoinder of parties.
5. Employee-Plaintiff's average weekly wage is $483.99 which yields a compensation rate of $322.82.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 49 years old. He is right hand dominant. Plaintiff did not finish the 10th grade. He testified that he has difficulty with reading. Plaintiff began working for Defendant-Employer as a Rebar Shaker in June 2008.
2. On July 8, 2008, Plaintiff was shaking rebar around 9:00 P.M. when he felt a pain in his right shoulder. Plaintiff testified at the hearing before the Deputy Commissioner that the rebar he was handling when his shoulder began hurting was larger and heavier than any rebar he had worked with before.
3. Plaintiff indicated that he had received several days of training to learn how to manipulate the rebar. He testified that he could not move the rebar the way Defendant-Employer trained him to, but he had developed his own method of working with the rebar, and he used the same method on the day of injury as he had been using since he started working. However, neither he nor the trainer handled rebar that large or that heavy. Plaintiff indicated that moving the rebar required lifting it to shoulder level in order to keep it from getting tangled.
4. Plaintiff testified that he reported the injury to his floor supervisor, Antonio, that night. Plaintiff also testified that he informed Greg Thompson, Operations Manager, of the injury on July 9 or 10, 2008. *Page 3 
5. Mr. Thompson testified before the Deputy Commissioner that when Plaintiff initially reported the shoulder injury he stated that it was not work related. It was not until a few days later that Plaintiff related the shoulder injury to a work incident. Mr. Thompson testified that Plaintiff did not report it to him. Instead, he had to "more or less coerce" the information from Plaintiff.
6. Plaintiff testified that he did not tell Mr. Thompson that his injury was not work-related when he initially reported it.
7. Mr. Thompson testified that he hired Plaintiff, and as part of the hiring process, he walked Plaintiff through the plant, explained the job duties, and showed Plaintiff the job. Mr. Thompson further testified that all rebar shakers were hired to manipulate all sizes of rebar handled at the plant, and that all rebar shakers are informed of this prior to hiring. Mr. Thompson described the shaking process as similar to whipping or casting a fishing line. He stated that it required a jerking motion that was chest high.
8. Mr. Thompson also testified that his records indicate that Plaintiff had worked with the same size rebar on numerous occasions prior to the date of injury. However, Mr. Thompson was not at work the night Plaintiff was injured. He relied on the production reports prepared by the shift supervisor. Mr. Thompson testified that he prepared a report of the rebar Plaintiff had worked with on all of his shifts for the hearing. The production reports on which his report was based were not submitted into evidence.
9. On July 9, 2008, Plaintiff presented to the Gaston Memorial Hospital Emergency Department complaining of right shoulder pain. X-rays of the right shoulder were negative. Dr. Melinda Threlkeld noted that Plaintiff likely had musculoskeletal shoulder pain. She prescribed *Page 4 
Ultram and Vicodin and instructed Plaintiff to follow up with an orthopedist if the pain continued for more than one week.
10. Plaintiff presented to Dr. Kathryn Caulfield, of The Hand Center of the Carolinas, on July 18, 2008. He reported that he had been working for Defendant-Employer moving rebar from a pile over to a machine that coats the rebar and had injured his right shoulder. Dr. Caulfield diagnosed Plaintiff with a probable right rotator cuff tear, prescribed physical therapy, and referred him to Carolina Orthopedics for follow up. Plaintiff began physical therapy on August 4, 2008.
11. Plaintiff returned to the Emergency Department on August 11, 2008, with continued shoulder pain stating he was out of medication. He was given some pain medication and work restrictions until his next appointment. Plaintiff and Mr. Thompson indicated that Defendant-Employer provided Plaintiff with light duty work.
12. Plaintiff underwent an MRI on August 11, 2008, that revealed a Type I acromion, intrasubstance tear of the supraspinatous tendon, and suspicion of labral tearing.
13. On August 14, 2008, Plaintiff presented to Dr. Erik C. Johnson of Carolina Orthopaedic Sports Medicine Center. Plaintiff reported that he was still having difficulty with his shoulder, and that he had pain mostly with overhead activities. Plaintiff received an injection into his shoulder.
14. Plaintiff returned to Dr. Johnson on August 28, 2008, stating that the pain had temporarily subsided after the injection but was currently getting worse. Dr. Johnson reviewed Plaintiff's MRI which revealed a full thickness tear of the supraspinatus tendon and tearing of the superior labrum. *Page 5 
15. Plaintiff underwent right shoulder arthroscopy on September 24, 2008. Dr. Johnson's postoperative diagnoses were right shoulder rotator cuff tear, right shoulder acromioclavicular joint degeneration, and right shoulder type 1 superior labral tear. The medical records reflect that Plaintiff developed adhesive capsulitis post-surgery which delayed his recovery.
16. Dr. Johnson testified that he thought Plaintiff's rotator cuff tear was an acute tear that occurred when he felt pain lifting rebar on July 8, 2008. He indicated that Plaintiff did not have to lift to shoulder level to tear his rotator cuff. Dr. Johnson testified that Plaintiff was in need of additional treatment for his symptoms.
17. Defendant-Employer provided Plaintiff with light duty work immediately after his injury. Plaintiff subsequently went out of work for surgery in September 2008, at which time he began receiving short-term disability benefits. At the time of the hearing, Plaintiff testified that he had been released by Dr. Johnson with temporary work restrictions of no lifting more than five pounds.
18. The Full Commission assigns more weight to the testimony of Plaintiff than to the testimony of Mr. Thompson. Mr. Thompson was not present on the evening of Plaintiff's injury and prepared for his testimony using production reports that he did not prepare and that were not introduced into evidence.
19. The Full Commission finds as fact that Plaintiff injured his right shoulder at work on July 8, 2008, when lifting heavier and larger rebar than he had lifted before. Consistent with the testimony of Dr. Johnson, the Full Commission further finds that the injury Plaintiff sustained as a result of his employment was a right rotator cuff tear. *Page 6 
20. The Full Commission finds that Plaintiff went out of work on September 24, 2008, as a result of his right shoulder injury and has been unable to return to work for Defendant-Employer since that time. Plaintiff sought employment with four employers after being released with restrictions but has been unsuccessful. Plaintiff's efforts to find work were reasonable in light of his limited education, his difficulty with reading, and his restriction to lifting no more than five pounds.
21. The Full Commission finds that Plaintiff has not reached maximum medical improvement and is in need of additional medical treatment.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. An employee has the burden of establishing every element of his claim, including establishing that he was involved in an "accident" at work. Hardin v. Motor Panels, Inc.,136 N.C. App. 351, 354, 524 S.E.2d 368, 371 (2000). For an injury by accident to be compensable, there must be a showing of an unusual and unanticipated event which is not part of an "`employee's normal work routine and normal working conditions[.]'" Lanier v.Romanelle's,192 N.C.App. 166, 664 S.E.2d 609 (2008) (citations omitted). The greater weight of the evidence in this case establishes that Plaintiff hurt his shoulder when he lifted rebar heavier and larger than any he had lifted before and tore his right rotator cuff. This incident constitutes an interruption of his work routine sufficient to constitute a compensable injury by accident. N.C. Gen. Stat. § 97-2(6). *Page 7 
2. There is insufficient evidence that Plaintiff contracted an occupational disease as a result of the July 8, 2008 incident or his work duties prior to that date. N.C. Gen. Stat. § 97-53(13).
3. As a result of his compensable right shoulder injury, Plaintiff is entitled to receive temporary total disability compensation beginning September 24, 2008, and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. Defendants may be entitled to a credit for the short term disability benefits Plaintiff has received, depending on whether they were partially or wholly employer-funded. N.C. Gen. Stat. § 97-42.
5. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of his compensable right shoulder injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay Plaintiff temporary total disability compensation in the amount of $322.82 beginning September 24, 2008, and continued until further Order of the Commission. Accrued compensation shall be paid in a lump sum.
2. Defendants shall pay for medical expenses incurred or to be incurred as a result of Plaintiff's compensable medical conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. Dr. Johnson shall remain Plaintiff's treating physician. *Page 8 
3. The parties shall confer to determine the amount of credit due Defendants, if any, based upon Plaintiff's receipt of short term disability benefits that may have been partially or wholly employer-funded.
4. A reasonable attorney's fee of 25% of the compensation due Plaintiff under paragraphs 1 of this Award is approved for Plaintiff's counsel and shall be paid by defendants as follows: 25% of the accrued compensation due Plaintiff shall be deducted from said compensation and shall be paid in one lump sum directly to Plaintiff's counsel; thereafter, Plaintiff's counsel shall be paid every fourth check due Plaintiff.
5. Defendants shall pay the costs.
This the 1st day of March, 2010.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1