***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner, and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence and revise the prior Opinion and Award. Accordingly, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. That all parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. That all parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. That all parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. That insurance coverage existed on the date of injury.
5. That the Plaintiff alleges to have sustained a compensable injury on March 24, 2009.
6. That an employment relationship existed between the Plaintiff and Employer-Defendant during some or all of the time period of the previous paragraph.
7. That Plaintiff's average weekly wage was $344.80, and his compensation rate was $229.88.
 *********** EXHIBITS
The following exhibits were admitted into evidence at the hearing before the Deputy Commissioner:
1. Stipulated Exhibit Number 1, Pre-Trial Agreement.
2. Stipulated Exhibit Number 2, Industrial Commission Forms, Motions and Orders, Discovery Responses, Employee File and Medical Records.
 *********** DEPOSITIONS *Page 3 
The following were received into evidence after the hearing before the Deputy Commissioner:
1. Oral deposition of David Allen, Jr., M.D., taken on January 24, 2011.
 *********** ISSUES
1. Whether Plaintiff suffered a compensable occupational disease or an injury by accident arising out of and in the course and scope of his employment with Employer-Defendant?
2. To what benefits is Plaintiff entitled to receive?
3. If Plaintiff's claim is compensable, whether Defendants are entitled to a credit for unemployment benefits and other benefits received by Plaintiff including the settlement funds from co-Defendant, Mountaire Farms, Inc.?
 ***********
Based upon the preponderance of the evidence of the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 29 years old at the time of the hearing before the Deputy Commissioner in this matter.
2. Plaintiff's employment with Employer-Defendant began on March 20, 2009, when he attended orientation.
3. On March 23, 2009, Plaintiff worked on the plant floor in the turkey packaging department. Plaintiff only worked a total of 5 days. *Page 4 
4. Employer-Defendant requires that all newly-hired employees participate in a two-week orientation and ergonomic program called "Ramp-In." During "Ramp In," Plaintiff rotated work stations every hour and a quarter to perform different tasks throughout the day. Plaintiff participated in the "Ramp-In" orientation process during the entire 5 day period of employment with Employer-Defendant.
5. During "Ramp-In," a trainer is assigned to train employees on how to correctly perform the multiple different jobs on the plant floor. Antonio Aguirre Chavez was Plaintiff's trainer and ergonomics coordinator during the "Ramp-In" orientation. Mr. Chavez was training Plaintiff and three other employees on the various tasks performed on the line. At each work station, Mr. Chavez would have Plaintiff and the other trainees observe for about 20 minutes, then he would personally show the trainees how to perform the job, and next he would let the trainees try the job two or three times before he took over and performed the task again. According to Mr. Chavez, approximately 70% of the time was spent observing by the trainees during the "Ramp In" orientation.
6. There is no production quota during this "Ramp-In" period. By his own testimony, Plaintiff spent at least 50% of the daily shift observing and not actually performing the various job tasks. In addition, Plaintiff took two 30-minute breaks each shift.
7. Plaintiff rotated through several job positions as part of the "Ramp-In" orientation and changed positions with the trainer every 75 minutes. Plaintiff alleged that the "flipping" or "stuffing" jobs caused pain and that he sought treatment at the plant medical station after only working on the floor for one day.
8. Out of the time during an eight hour work day, Plaintiff took two 30-minute breaks, and Plaintiff did not dispute the employer's records indicating that he spent no more than *Page 5 
30% of the time at the stations that involved any "flipping" or "stuffing" and during this time, Plaintiff was observing, rather than performing any work, at least 50% of the time.
9. Plaintiff last worked for Employer-Defendant on March 30, 2009.
10. Plaintiff did not begin treating with Dr. Allen until July 20, 2009, nearly four months after leaving Employer-Defendant. Plaintiff began treating with Dr. Allen upon referral by Plaintiff's counsel.
11. Dr. Allen diagnosed Plaintiff with de Quervain's tenosynovitis. According to Dr. Allen, de Quervain's tenosynovitis is caused when the tendons in the wrist become swollen, causing inflammation and pain, and that the primary symptom in a patient suffering from de Quervain's tenosynovitis would be pain in the area of the thumb and the base of wrist.
12. When Tony Raby, a medic for Employer-Defendant, evaluated Plaintiff at the plant's medical department, and he found no bruising or swelling involving the thumb or wrist, and Plaintiff did not complain to Mr. Raby of any right wrist or thumb pain.
13. Dr. Allen testified at his deposition that when he began treating Plaintiff, he was not familiar with Plaintiff's job or with the employer's plant. Dr. Allen also believed that Plaintiff was still working for the Employer when he began treatment in July of 2009 and did not realize Plaintiff had not worked in that job for over 3 months.
14. Dr. Allen testified that he believed Plaintiff's employment caused the de Quervain's tenosynovitis because Plaintiff told him that is where he thought he developed the problem and because Plaintiff did not have the condition before he started the job. Each time Dr. Allen was asked his opinion on the cause of the condition, he expressed that his opinion was based on his understanding that Plaintiff did not have the condition before this job. *Page 6 
15. Dr. Allen could not point to any medical literature that would support an opinion that de Quervain's tenosynovitis would develop after such a short period of employment such as in this case. He also offered no testimony that the job duties Plaintiff actually performed occurred in such regular or frequent intervals over an extended period of time such as to traumatically induce the de Quervain's tenosynovitis.
16. Dr. Allen acknowledged that Plaintiff, having started a new job with Employer-Defendant, may have instead had some discomfort from doing a job he had not done before, and that the pain he reported while working could be completely separate from the de Quervain's tenosynovitis that Dr. Allen diagnosed three and a half months later when Plaintiff came into his office.
17. Dr. Allen also confirmed that about 30 percent of his de Quervain's tenosynovitis patients develop the condition from overuse or repetitive motion not specific to any particular type of employment, and that De Quervain's Tenosynovitis is not unique to individuals working in turkey plants.
18. Dr. Allen was asked to give a causation opinion based upon an incomplete and inaccurate description of the job duties Plaintiff actually performed. He also premised his opinions expressly on his understanding that Plaintiff did not have the condition before this employment. Dr. Allen was unaware that Plaintiff also pursued this claim for de Quervain's tenosynovitis against a former employer, Mountaire, or that he had accepted $2,500 from Mountaire in settlement of his claim that the condition had developed from his employment at Mountaire.
19. Dr. Allen offered no opinion that Plaintiff's employment with Employer-Defendant placed him at an increased risk of developing de Quervain's tenosynovitis. *Page 7 
20. Based upon the preponderance of the evidence of record and the credible medical evidence of record, Plaintiff failed to establish that his job with Employer-Defendant placed him at an increased risk of developing de Quervain's tenosynovitis as a result of his job duties in the turkey packaging department of Employer-Defendant.
21. Based upon the preponderance of the evidence of record and the credible medical evidence of record, Plaintiff failed to establish that he contracted a compensable occupational disease.
22. Based upon the preponderance of the evidence of record and the credible medical evidence of record, Plaintiff failed to establish that he developed tenosynovitis as a result of trauma in his employment with Employer-Defendant.
23. Based upon the preponderance of the evidence of record and the credible medical evidence of record, the Full Commission finds that Dr. Allen released Plaintiff to return to work without restrictions as of March 29, 2010, and that the medical treatment provided by Dr. Allen is unrelated to Plaintiff's 5 days of work with Employer-Defendant.
24. Based upon the preponderance of the evidence of record and the credible medical evidence of record, the Full Commission finds that Plaintiff reached maximum medical improvement on March 29, 2010.
 ***********
Given the foregoing stipulations and findings of fact, based upon the preponderance of the record in view of the entire record, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. "Tenosynovitis, caused by trauma in the employment" is an enumerated occupational disease under N.C. Gen. Stat. § 97-53(21) and has been considered in de Quervain's *Page 8 
Tenosynovitis cases. For "Tenosynovitis caused by trauma" to be compensable, Plaintiff must prove that it was caused by a series of events, of a similar or like nature, occurring in regular or frequent intervals, developing gradually, over an extended period of time, in employment. Henry v. A.C. Lawrence Leather Co.,234 N.C. 126, 130, 66 S.E.2d 693, 696 (1951).
2. It is also Plaintiff's burden to prove each and every element of compensability, including medical causation. Adams v. Metals USA,168 N.C.App. 469 (2005) aff'd by 360 N.C. 54 (2005). Complicated medical questions must be addressed by an expert and must not be speculative. Dr. Allen's medical causation is speculative. Gross v.Gene Bennett Co., 703 S.E.2d 915 (N.C. Ct. App. 2011); Holley v.ACTS, Inc., 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003).
3. Where an expert witness bases his medical causation opinion on the maxim post hoc, ergo propter hoc, or a mere temporal relation, the witness testimony is insufficient evidence to establish causation.Young v. Hickory Bus. Furniture,353 N.C. 227, 233, 538 S.E.2d 912, 916. (2000). Dr. Allen repeatedly testified that the basis for his opinion in attributing any causation between the de Quervain's tenosynovitis and Plaintiff's job with Employer-Defendant was because Plaintiff did not have the problem before he worked for Employer-Defendant. Dr. Allen's testimony is insufficient evidence of causation. Id.
4. Plaintiff has failed to meet his burden of proving that he developed tenosynovitis as a result of trauma in the employment caused by a series of events, of a similar or like nature, occurring in regular or frequent intervals, developing gradually, over an extended period of time, in employment. Plaintiff's claim for tenosynovitis, caused by trauma in employment is not compensable. N.C. Gen. Stat. § 97-53(21); Lanier v. Romanelle's,192 N.C. App. 166, *Page 9 664 S.E.2d 609 (2008); Henry v. A.C. Lawrence Leather Co.,234 N.C. 126, 130, 66 S.E.2d 693, 696 (1951).
5. Plaintiff presented no evidence that his job placed him at an increased risk of developing de Quervain's tenosynovitis and, therefore, his claim is not compensable N.C. Gen. Stat. § 97-53(13).
6. Plaintiff has failed to prove that he suffered a compensable occupational disease, and, therefore, is entitled to no benefits under the Act. (N.C. Gen. Stat. §§ 97-53(13); 97-53(21); Lanier v.Romanelle's, 192 N.C. App. 166, 664 S.E.2d 609 (2008); Henry v.A.C. Lawrence Leather Co.,234 N.C. 126, 130, 66 S.E.2d 693, 696 (1951); Rutledge v.Tultex Corp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983).
 ***********
Given the foregoing stipulations, findings of fact, and conclusions of law, based upon the preponderance of the evidence in view of the entire record, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for occupational disease is hereby DENIED.
2. Each side shall bear its own costs.
This the __ day of November 2011.
 S/___________________ PAMELA T. YOUNG CHAIR
 CONCURRING: *Page 10 
S/_____________ DANNY LEE McDONALD COMMISSIONER
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER